UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
The WOB Company, Inc. (d/b/a Mestel & Company),   )   No. 18-cv- 07527
              Plaintiff,   )
                        )   AMENDED COMPLAINT
              -against-   )
                        )   Judge:
                        )   Magistrate:
Benson Friedman,   )
              Defendant.   )
------------------------------------------------------- x

Plaintiff The WOB Company, Inc. (doing business as Mestel & Company, hereinafter "Mestel"), by its attorneys, Jones Day, as its Complaint against Defendant Benson Friedman, states as follows:

## NATURE OF CLAIMS

1. Mestel is one of the nation's leading attorney placement firms. In 2017, Mestel terminated the employment of Mr. Friedman, who had formerly practiced law and then moved into the realm of attorney recruiting. In an effort to ease his transition out of the company, Mestel agreed to release Mr. Friedman from a restrictive covenant so that he could continue to represent a defined book of attorneys who were Mestel candidates. Although Mestel had no obligation to do so, Mestel entered into a written Termination Agreement and Release with Mr. Friedman (the "Termination Agreement"). In accordance with its provisions, the Termination Agreement released Mr. Friedman from his non-compete obligations in exchange for his agreement to (a) act as an independent contractor on behalf of Mestel and (b) share any commissions flowing from Mr. Friedman's placement of a list of defined Mestel attorney candidates with law firms. Absent the Termination Agreement, Mr. Friedman would have been barred from placing Mestel's candidates with any firm for a period of 12 months.

2. Mr. Friedman made multiple placements after executing the Termination Agreement. After sharing in significant commissions that he would never have received but for Mestel's accommodation in extending him the Termination Agreement, Mr. Friedman apparently realized that he had a lucrative opportunity to place a relatively sizable group of attorneys with a law firm in a Midwest city.

3. As explained more fully below, Mr. Friedman then began a pattern of activity apparently designed to: (a) create the illusion that Mestel had breached the Termination Agreement; (b) conceal his role in placing the attorneys with that law firm; and (c) tamper with a potential witness in this matter, all so as to deny Mestel its rightful share of placement commissions. Among other things, Mr. Friedman falsely denied having any role in making this placement.

4. Mestel ultimately determined that, contrary to his prior representations and in contravention of the Termination Agreement, Mr. Friedman had in fact made the placement of the Mestel candidates without reporting that activity to Mestel. Despite the explicit terms of the Termination Agreement, Mr. Friedman also has refused to share the placement fee with Mestel. Those fees are being withheld by the law firm client pending resolution of this matter by the Court.

5. Mestel has filed this action to seek the intervention of the Court to declare Mr. Friedman in breach of the Termination Agreement and for such other relief as is appropriate in law or at equity.

**PARTIES**

6. The WOB Company, Inc. is a corporation organized under the laws of the State of New York. It maintains it principal place of business in New York City. The WOB Company operates nationally under the name Mestel & Company (or localized variants thereof). Mestel is

a leading firm involved in the placement of lawyers and is devoted exclusively to serving the legal profession.

7. Mestel employed Benson Friedman as a recruiter from on or about August 3, 2009 until his termination in 2017, all as described below. Mr. Friedman is a citizen and resident of Illinois.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. This complaint also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 in that it seeks a declaration of the rights of the parties under the Termination Agreement.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the plaintiff does business in New York, New York, and the Termination Agreement at issue was deemed to be made in New York and governed by the laws of that state.

## FACTUAL ALLEGATIONS

### Background

10. During his tenure with Mestel from on or about August 3, 2009 to September 14, 2017, Mr. Friedman worked as a recruiter. In that capacity, he assisted in the placement of attorneys with law firms and corporate entities, primarily focusing on candidates and firms located in and around Chicago, Illinois.

11. As a condition of his employment, Mr. Friedman executed on or about July 14, 2009 an Employment Agreement with Mestel, a true and correct copy of which is attached as Exhibit A. Among other things, that Employment Agreement lawfully restricted Mr. Friedman's ability, for a twelve month period following termination of his employment, to solicit or attempt

to solicit, on his own behalf or on behalf of others, either (a) Mestel's law firm clients with whom he had dealt during his tenure or (b) Mestel's then-current pool of applicants seeking jobs with law firms.  *See* Exhibit A, Section 5 (a)(i)-(iv) and (vi)-(vii).

12. As an employee of Mestel, Mr. Friedman had no authority to amend any agreement between Mestel and any of its law firm clients.

13. Mestel's law firm agreements often contain a guarantee clause whereby Mestel agrees to refund to the law firm client all or a portion of the placement fee due under the agreement if the attorney leaves his or her new firm within a specified period.  The amount of the commission that is subject to refund typically decreases *pro tanto* with the passage of time.  For example, if the guarantee is six months, and the attorney has stayed for three months, the amount of commission subject to refund would typically drop to 50%.

14. Mr. Friedman was aware of such guarantees in Mestel's agreements and their operation.  In connection with his employment, Mr. Friedman understood and agreed that any of his commissions subject to a guarantee were only earned by him as the guarantees aged out.  Thus, in the foregoing example, Mr. Friedman would be paid 50% of his commission following the expiration of three months and the remaining 50% following the expiration of six months.

15. On September 14, 2017, Mestel terminated Mr. Friedman's employment for cause.

16. At the time of his termination, Mr. Friedman and Mestel discussed modifying the terms and conditions of his Employment Agreement.  Mr. Friedman, for example, expressed concern about the non-solicitation and non-competition elements of his Employment Agreement and their impact on his post-termination activities and income.  Mestel indicated its willingness to consider offering him relief from various covenants, including the possibility of permitting him to continue to place various Mestel candidates.

17. Mestel ultimately agreed to permit Mr. Friedman to continue to represent a roster of Mestel candidates. Without such relief from the restrictive covenant, Mr. Friedman would have been legally barred from representing any of those individuals following his termination. The parties' agreements were incorporated into a written Termination Agreement and Release, a copy of which is attached as Exhibit B. The exhibit identifying the candidates is not attached to Exhibit B to respect the candidates' privacy.

18. In the Termination Agreement, the parties agreed, among other things, that:

   A. Mr. Friedman was acting as "independent contractor" for Mestel;

   B. Certain fees were to be divided between Mestel and Mr. Friedman;

   C. Mr. Friedman had to report monthly on the status of all activities that he undertook on behalf of the Mestel candidates; and

   D. Mr. Friedman had to notify Mestel when a candidate that he represented accepted an offer of employment.

**A.    Mr. Friedman Manufactures A Dispute.**

19. In February 2018, Mr. Friedman placed a candidate with a law firm in the Midwest (hereinafter "Law Firm One"). The sole agreement between Mestel and Law Firm One provided that (a) a guarantee applied to the placement, and (b) the agreement could only be terminated by written notice by overnight mail (with proof of receipt) or registered or certified mail, return receipt requested. Law Firm One never provided a written notice of termination to Mestel.

20. Consistent with its normal practice, Mestel advised Mr. Friedman that he would be paid his share of the commissions as the guarantee aged out. Even though this was consistent with Mestel's only signed agreement with Law Firm One, and even though Law Firm One declined to relieve Mestel of the guarantee, and even though this practice had been followed throughout his entire tenure with Mestel, Mr. Friedman attempted to escalate this matter into an alleged breach of

the Termination Agreement.  More specifically, he asserted that his arrangement with the client did not include a guarantee, a position directly at odds with the position espoused by Law Firm One.

21.     In an effort to avoid needless controversy, and without prejudice to its position that the guarantee applied, Mestel ultimately paid Mr. Friedman the outstanding balance of his commission, even though the guarantee period had not then expired.

B.    **Mr. Friedman Conceals and Misrepresents His Role in Another Placement.**

22.     On or about June 1, 2018, Mr. Friedman was due to send a report to Mestel regarding his activities in placing attorneys.  No report was received.

23.     Later, Mestel learned through public sources that a group of Mestel candidates had been placed with a large law firm based in the Midwest ("Law Firm Two").

24.     The partners placed with Law Firm Two were all persons who were subject to the post-termination fee sharing arrangement between Mestel and Mr. Friedman.

25.     Mestel had an agreement with Law Firm Two that governed the placement of candidates by Mestel.  Law Firm Two never sent a notice of termination of that agreement to Mestel.

26.     Neither as an employee nor as an independent contractor did Mr. Friedman have any authority to modify or abdicate Mestel's agreement with Law Firm Two.

27.     After the placement of the Mestel candidates with Law Firm Two, Mr. Friedman telephoned a Mestel employee (hereinafter, the "Caller").  (In the placement industry, a caller contacts attorneys in order to determine whether a particular attorney might be interested in making a change in his or her career.)  The Caller was responsible for originally contacting the partners placed at Law Firm Two and, accordingly, was entitled to share in the commissions if Mr.

Friedman had made the placement.  In an apparent effort to deceive both Mestel and the Caller, Mr. Friedman falsely told the Caller that he had not been involved in placing any candidates at Law Firm Two.  On information and belief, Mr. Friedman made these false statements in an effort to convince both the Caller and Mestel that they had no entitlement to share in the commissions due from Law Firm Two.

28. Subsequently, Mestel was able to confirm that Mr. Friedman had in fact placed the group of attorneys at Law Firm Two, and that he thus had made false statements to the Caller, who was his former fellow employee.

29. After this revelation, Mr. Friedman once again telephoned the Caller.  In an apparent attempt to tamper with the Caller's prospective testimony, Mr. Friedman tried to persuade the Caller to accept an inaccurate and manufactured version of their recent conversation.  The Caller declined to do so.

30. Mestel has repeatedly asked Mr. Friedman to instruct Law Firm Two to release to Mestel its share of the fees associated with the placement of the attorney group.  All efforts to have Mr. Friedman acknowledge Mestel's entitlement to share in the placement fee with respect to Law Firm Two have been unavailing.  He has refused to authorize payment in accordance with the Termination Agreement, asserting instead that the Termination Agreement is now null and void and that 100% of the fees must now go to him (and, at his direction, third parties who allegedly assisted him).

31. Faced with conflicting claims by Mestel and Mr. Friedman, Law Firm Two has agreed to hold the fee and to refrain from distributing any monies to Mr. Friedman or Mestel pending resolution of this matter.

32. The fees associated with the placement of the attorneys at Law Firm Two were substantial and, by Mestel's estimate, the fees that would have been paid to Mestel had Mr. Friedman not breached the Termination Agreement exceed $300,000.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT/DECLARATORY ACTION

33. Mestel repeats and realleges Paragraphs 1 through 32 as if fully set forth herein.

34. Mestel has honored all its obligations under the Termination Agreement.

35. In refusing to allow Mestel to share in the fees in accordance with the Termination Agreement, Mr. Friedman has breached that agreement. He has further breached the Termination Agreement in that Mr. Friedman exceeded the scope of his authority as an independent contractor when he effectively renegotiated the rates due under the agreement between Mestel and Law Firm Two. In instructing Law Firm Two that the fees should be directed to him rather than to Mestel, Mr. Friedman has committed yet another breach of the Termination Agreement.

36. Mr. Friedman's activities have caused damages to Mestel. Among other things, Mestel has been denied its share of the placement fees in accordance with its agreement with Law Firm Two and the Termination Agreement.

37. Mestel thus seeks a declaratory judgment from this Court:

    A. Affirming that Mr. Friedman has breached the Termination Agreement; and

    B. Confirming that Mestel is entitled to its full share of the fees in accordance with its agreement with Law Firm Two and the Termination Agreement.

## SECOND CAUSE OF ACTION:
## UNJUST ENRICHMENT

38. Mestel repeats and realleges Paragraphs 1 through 37 as if fully set forth herein.

39. Mestel conferred a significant benefit upon Mr. Friedman. Among other things, Mestel, at significant cost, hired callers (including the employee identified above as the "Caller")

to locate the lawyers whom Mr. Friedman placed at Law Firm Two.  In addition, Mestel conferred a benefit upon Mr. Friedman by:

    A.    Introducing him to the Partners he placed at Law Firm Two;

    B.    Introducing him to various firms that Mestel had maintained as clients, including Law Firm One and Law Firm Two; and

    C.    Waiving the restrictive covenant in his Employment Agreement, thus permitting him to continue to work with the attorneys whom he ultimately placed at Law Firm Two.

40. Mr. Friedman has asserted that Mestel's conduct in applying its normal terms for the payment of a commission that is subject to a guarantee – as was the case at Law Firm One – breached the Termination Agreement and excused him from any and all obligations thereunder and rendering the agreement null and void.

41. Pleading in the alternative to Count I, Mestel asserts that if the Termination Agreement was rendered null and void (as Mr. Friedman has suggested) by virtue of an antecedent breach by Mestel, then Mr. Friedman would be unjustly enriched if he were to retain either (a) all of the fees in connection with the placement of the attorneys at Law Firm Two, or (b) any fees in excess of the amounts agreed to in the agreement between Law Firm Two and Mestel and the Termination Agreement.

42. In equity and good conscience, Mr. Friedman ought not be permitted to claim an exclusive right in such fees.  Among other factors, the partners placed by Mr. Friedman at Law Firm Two were all clients of Mestel, whose original relationship with Mestel originated through the efforts of the Caller and whose continued representation by Mr. Friedman was made possible only by Mestel's waiver of the pre-existing non-compete agreement.

### THIRD CAUSE OF ACTION: TORTIOUS INTERFERENCE

43. Mestel repeats and realleges Paragraphs 1 through 42 as if fully set forth herein.

44. Mestel was a party to a valid agreement with Law Firm Two. Among other things, that agreement specified the rates to be paid to Mestel in connection with placements effectuated by and through Mestel and those working on its behalf.

45. Mr. Friedman was aware of the agreement between Mestel and Law Firm Two.

46. Despite the fact that his sole authority was to serve as an independent contractor for, and not as a representative of, Mestel, Mr. Friedman unilaterally placed the attorneys at Law Firm Two at rates that were lower than, and in contravention of, Mestel's negotiated rates.

47. Mr. Friedman's interference was both intentional and unjustified.

48. Mestel has suffered damages as a result of Mr. Friedman's interference.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

A. Declaring that the Termination Agreement was at all times relevant to this Complaint a valid agreement, binding Mr. Friedman to act in accordance with its terms;

B. Directing Mr. Friedman to immediately assent to the release of at least $300,000 in placement fees to Mestel by Law Firm Two, with the precise amount of such fees to be determined in accordance with both (i) the agreement between Mestel and Law Firm Two and (ii) the fee-sharing formula set forth in the Termination Agreement;

C. Awarding plaintiff pre- and post-judgment interest;

D. Awarding plaintiff the costs of this action together with reasonable attorneys' fees; and

E. Granting such other and further relief as this Court deems necessary and proper.

## **DEMAND FOR A TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mestel demands a trial by jury on all issues so triable.

Dated: August 17, 2018 **JONES DAY**

By: */s/ Brittany S. Zimmer*
Brittany S. Zimmer
Jones Day
250 Vesey Street
New York, NY 10281-1047
1.212.326.3939

*/s/ William F. Dolan*
William F. Dolan (*pro hac vice*
application to be filed)
Jones Day
77 W. Wacker Drive
Chicago, IL 60601
1.312.782.3939

*Attorneys for Plaintiff
Mestel & Company*