# EXHIBIT B

# TERMINATION AGREEMENT AND RELEASE

This Termination Agreement and Release ("Agreement") is made this 19th day of September 2017 between Benson Friedman (hereinafter "Friedman") and Mestel & Company, LLC (hereinafter "Mestel").

**WHEREAS**, Friedman commenced his employment with Mestel on or about August 3, 2009.

**WHEREAS**, Friedman's employment with Mestel ended on September 14, 2017.

**NOW, THEREFORE,** for good and valuable consideration, the sufficiency and receipt of which the parties acknowledge the parties agree as follows:

1. **Termination and Benefit Continuation**

   a. Friedman's last day of employment with Mestel will be September 14, 2017 (the "Separation Date") Friedman will receive his draw, less applicable withholdings and deductions, through the Separation Date in accordance with Mestel's normal payment procedures.

   b. Friedman does not receive health benefits coverage from Mestel.

   c. In exchange for Friedman's commitments under this Agreement, Mestel will (1) pay Friedman $125.00, which will consist of a reimbursement for business expenses incurred by Friedman prior to the end of his employment, and (2) authorize Friedman to continue to represent the candidates listed on Exhibit A as an independent contractor of Mestel for a one hundred and fifty (150) day period following the Effective Date of this Agreement (as defined in paragraph 2(c) below) (the "Post Employment Period").

   Mestel shall pay Friedman an amount equal to

(1) fifty (50%) percent of the fee Mestel receives for candidates sourced by Friedman should Friedman successfully Place (as defined below) an applicable candidate with a client during the Post Employment Period, or

(2) thirty (30%) percent of the fee Mestel receives for candidates sourced by another Mestel employee should Friedman successfully Place an applicable candidate with a client during the Post Employment Period.

The term Place is defined as an offer of employment extended by a client to a candidate listed on Exhibit A and the candidate's acceptance of such offer.  Mestel's obligation to pay Benson is conditioned upon its receipt of payment from the client as well as the candidate's successful completion of any guarantee period(s).  Mestel shall pay Friedman the amount he is owed or any portion thereof within fifteen (15) days from the date that Mestel receives an applicable fee and any guarantee associated with that amount has been satisfied.  Friedman shall be solely responsible to communicate directly with the candidates listed on Exhibit A as well as with any relevant clients during the Post Employment Period.  Mestel shall forward any and all relevant communications it receives from the candidates listed on Exhibit A or the relevant clients should it receive such communications during the Post Employment Period. Mestel shall provide Friedman updates on invoicing and collections associated with candidates listed on Exhibit A that he has Placed upon Friedman's written request to Mary Rosenfeld, which shall not be made in excess of once per month.

Friedman shall provide detailed monthly updates on the status of his candidates to Mary Rosenfeld via email at mrosenfeld@mestel.com on the first day of each month following the Effective Date of this Agreement.  Friedman shall also immediately notify Mary Rosenfeld upon a candidate's acceptance of any offer made by a client.  Friedman shall no longer serve

as an independent contractor and representative for the applicable candidates on behalf of Mestel who have not been Placed by Friedman during the Post Employment Period.

Friedman acknowledges and agrees that this arrangement is not an arrangement for which he is otherwise entitled, and that this arrangement constitutes valid and sufficient consideration for signing this Agreement.  Moreover, Friedman agrees not to solicit, divert or hire away any person employed by Mestel for or on behalf of any Competing Business (as defined below) as an employee or independent contractor during the twelve (12) months following the Effective Date of this Agreement. A Competing Business is defined as any business which is engaged in permanent placements.  In addition, except for the candidates listed on Exhibit A, Friedman agrees not to intentionally solicit any candidates that are currently on the market with Mestel or that have been Placed by Mestel, as of your last day of employment with Mestel, to discuss employment opportunities for twelve (12) months following the Effective Date of this Agreement. Friedman also agrees not to solicit any candidates listed on Exhibit A to discuss employment opportunities separate from those opportunities presented through Mestel for a period of twelve (12) months following the Post Employment Period or the date upon which they were Placed by Friedman under this Agreement, whichever is longer.  Friedman shall not be subject to any non-compete and/or non-solicitation restriction except for those expressly stated herein.

2. **General Release**

a. In consideration for the payment and arrangement provided for in Paragraph 1(c) of this Agreement, Friedman and his successors, assigns, heirs, executors, agents, administrators and any legal and personal representatives of each of the foregoing, and each of them hereby releases, remises, acquits and forever discharges Mestel, and where applicable,

3

its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, trustees, directors, shareholders, partners, employees, agents, heirs, administrators, executors and attorneys, past and present (the "Releasees"), from any and all claims, demands, actions, causes of action, debts, liabilities, rights, contracts, obligations, duties, damages, costs, of every kind and nature whatsoever, and by whomever asserted, whether at this time known or suspected, or unknown or unsuspected, anticipated or unanticipated, direct or indirect, fixed or contingent, which may presently exist or which may hereafter become known, arising out of or in any way connected with Friedman's relationship with any of the Releasees, his employment with Mestel, and the termination of that employment, or any other transaction, occurrence, act or omission, or any loss, damage or inquiry whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of said Releasees, or any of them, committed or omitted prior to the Effective Date of this Agreement and Release, including without limiting the generality of the foregoing, any claim under Illinois State and City Human Rights Laws, Labor Laws and/or Wage and Hour Laws, the Illinois Whistleblower Law, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1866, 1964, and 1991, the Age Discrimination in Employment Act, the Americans With Disabilities Act of 1990, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974 or any other federal, state or local statute, regulation or ordinance or otherwise.  It is further understood that nothing herein shall preclude Friedman from filing a charge of discrimination with the Equal Employment Opportunity Commission concerning issues arising during his/her employment with Mestel.

      b.    Friedman hereby expressly consents that the general release contained in Paragraph 2(a) shall be given full force and effect according to each and all of its express terms

and provisions. Friedman hereby expressly acknowledges that he has been advised to and has reviewed this Agreement and the general release that it contains with an attorney and that he understands and acknowledges the significance and consequences of said general release, and that he understands and acknowledges that without such provision, Mestel would not have entered into this Agreement or provided his with the payment described in Paragraph l(c).

   c. Friedman acknowledges that he has been given twenty-one (21) days from the date he received this Agreement to decide whether to sign it. If Friedman chooses to sign the Agreement, he must return the original signed Agreement to Stephanos Zannikos, Esq. at szannikos@hirecounsel.com at any time during this twenty-one (21) day period. Friedman further acknowledges that, if he does sign this Agreement, he will have seven (7) days from the date he signs it to revoke this Agreement. In order for the revocation to be effective, Friedman's revocation must be in writing, signed and must be received by Stephanos Zannikos, Esq. by the close of business on the seventh day. If Friedman does not revoke this Agreement within the seven (7) day period, the Agreement shall become effective and irrevocably binding at the conclusion of that seven-day period (the "Effective Date").

   3. **<u>Return of Company Property</u>**

Friedman acknowledges that he has returned to Mestel all Mestel property in his possession, including all keys, access cards, computers, cell phones, and materials (including all documents, notes, records or other data created or stored in any medium) that relate in any way to Mestel that was given to him, created by him, or otherwise came into his possession, at any time during his employment or after his employment ended through the date that he signed this Agreement. Friedman further agrees that he will not distribute to any third party or retain any copies of such materials.

5

4. **Successors and Assigns**

Upon the merger or consolidation of Mestel into or with another entity, or upon the sale of all or substantially all the assets, business and goodwill of Mestel, this Agreement shall bind and inure to the benefit of both Mestel and the acquiring, succeeding or surviving entity, as the case may be.

5. **Miscellaneous Terms**

The parties herein agree to refrain from disparaging one another to other persons or parties. Friedman specifically agrees that he will not disparage Mestel and its parents, subsidiaries, affiliates, officers, board members, trustees, directors and employees. Friedman understands and acknowledges that this is a material term of this Agreement and that any violation by his will result in the automatic forfeiture of the payment and arraignment provided for in Paragraph 1(c) of this Agreement.

6. **Applicable Law**

This Agreement supersedes any and all prior agreements between the parties whether oral or in writing and performance hereunder shall be governed and construed as if wholly entered into and performed within the State of New York. Any controversy or claim arising out of or relating to this Agreement or any breach thereof shall be resolved exclusively in the state or federal courts situate in New York City.

7. **Execution in Counterpart**

This Agreement may be executed in counterparts with the same effect as if the signatures were on the same instrument.

8. **Confidentiality**

Friedman and Mestel agree that the fact and terms of this Agreement shall be kept strictly confidential and will not be disclosed to any third parties other than immediate family members and legal or tax advisors except as required by law. Friedman specifically acknowledges that this is a material term of this Agreement and that any violation by his will result in the automatic forfeiture of the payment provided for in Paragraph 1(c) of this Agreement.

9. **<u>Entire Agreement</u>**

This Agreement sets forth Friedman's full and complete rights, payments and benefits (including without limitation rights, payments and benefits under any employment arrangements, prospective employment arrangements, stock or stock option plan, vacation pay, health and other benefits plans) that Friedman is entitled to receive as a result of his separation from Mestel and represents the entire agreement between the parties. Notwithstanding the terms in Section 9, Friedman does not waive any vested rights and entitlement he may have in accordance with the terms of a 401(k) plan, if any, as well as under the Employee Stock Ownership Plan ("ESOP").

**BENSON FRIEDMAN**  **MESTEL & COMPANY, LLC**

By: _Benson K. Friedman_ (DocuSigned by: DAD3F26AF68E496...)

Date: 9/20/2017 | 12:14 EDT

By: _Joan M. Davison_ (DocuSigned by: 55BEB65BA3D8416...) Joan M. Davison

Title: CEO

Date: 9/20/2017 | 12:41 EDT

7